JACK L. URETSKY *et al.*, Plaintiffs-Appellants, *v.* WILLIAM K. BASCHEN, Downers Grove Township Assessor, *et al.*, Defendants-Appellees.

Second District (1st Division)    No. 75-495

Opinion filed April 1, 1977.—Rehearing denied May 2, 1977.

Jack L. Uretsky, of Hinsdale, for appellants.

John J. Bowman, State's Attorney, of Wheaton (Robert D. McLaren and Douglas Slansky, Assistant State's Attorneys, of counsel), for appellees.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Jack L. Uretsky and the LaGrange State Bank (hereinafter the taxpayer) filed a three-count complaint against the Downers Grove Township Assessor and the Du Page County Board of Review which, as amended, essentially challenged the increased valuation of the taxpayer's property as a part of an alleged reassessment of all residential real property in Downers Grove Township in a nonquadrennial year. In count I the taxpayer sought a declaratory judgment that the assessor's revision in the nonquadrennial year 1974 was unauthorized by law and void. In count II declaration was sought that section 46 of the Revenue Act of 1939 (Ill. Rev. Stat. 1975, ch. 120, par. 527), pursuant to which the revised assessments were purportedly made, was unconstitutional. The taxpayer sought to enjoin collection based on the claimed unlawful assessment, to enjoin further nonquadrennial assessments, and to temporarily restrain collection pending a hearing on his prayer for a preliminary injunction. Count III charged the assessor and the board with failure to accord the taxpayer procedural due process. In this count the taxpayer asked the

court to set aside the increased assessment, to enjoin the board to reschedule its hearing on the taxpayer's complaint, and to award damages.

The defendants' motions to dismiss the complaint were granted, and the taxpayer appeals.

The taxpayer's suit is premised on his argument that the alleged 1974 general reassessment of residential real estate in Downers Grove Township was unauthorized by law. The resolution of this question involves several sections of the Revenue Act.

Section 46 provides as pertinent:

> "The supervisor of assessments, the county assessor or the board of assessors of any county having fewer than 1,000,000 inhabitants, or the township assessor of any township in any such county, may in any year revise an assessment and correct such assessment as shall appear to him or them to be just. * * *" (Ill. Rev. Stat. 1975, ch. 120, par. 527.)

Section 111.1 of the Revenue Act provides as pertinent:

> "In any county other than a county of over 1,000,000 population, any taxpayer dissatisfied with the decision of a board of review as such decision pertains to the assessment of his property for taxation purposes, * * * may, within 30 days after the date of written notice of the decision of the board of review, appeal such decision to the Property Tax Appeal Board for review. * * * However, any taxpayer not satisfied with the decision of the board of review as such decision pertains to the assessment of his property for taxation purposes, need not appeal such decision to the Property Tax Appeal Board for review before seeking relief in the courts." Ill. Rev. Stat. 1975, ch. 120, par. 592.1.

The taxpayer argues that the assessor and the board had no authority under section 46 of the Revenue Act to reassess property in nonquadrennial years. He reasons that prior to 1971 section 46 prohibited assessors from revising assessed valuations in nonquadrennial years with exceptions not relevant here and that the 1971 amendment of section 46 was not intended to permit assessors to make annual assessments. He argues that the amendment was part of an act changing the equalization powers of the Department of Local Government Affairs and merely empowered the assessor to conduct nonquadrennial reassessments when ordered by the Department or to correct mistakes on individual assessments. He further contends that if the 1971 amendment was intended to permit the assessor to conduct general reassessments annually, it violated the constitutional provision mandating that bills be confined to one subject. (Ill. Const. 1970, art. IV, § 8(d).) The taxpayer

also refers to section 30 of the Revenue Act (Ill. Rev. Stat. 1975, ch. 120, par. 511) which provides generally for quadrennial assessments.

The defendants answer that the taxpayer is seeking the aid of equity in a matter which is properly the subject of a legal remedy through the tax objection procedures. (See Ill. Rev. Stat. 1975, ch. 120, pars. 675, 716.) Responding to the alleged unconstitutionality of section 46 of the Revenue Act, the defendants argue that there is no equity jurisdiction since the taxpayer does not claim that the total assessment is unauthorized by law but only the increased portion of the 1974 real estate taxes involved in the reassessment.

■■ The initial question of the propriety of the trial court's denial of declaratory relief under counts I and II is in turn dependent upon whether the taxpayer was entitled to the injunctive relief which he sought. The entry of a declaratory judgment in a real property tax case is not precluded. (See *People ex rel. Hamer v. Jones*, 39 Ill. 2d 360, 369 (1968).) In order to avoid interference with the collection of revenues, however, it has been held that relief should not be afforded by way of declaratory judgment "in any cases which would not have merited relief in equity by injunction * * *." *Goodyear Tire & Rubber Co. v. Tierney*, 411 Ill. 421, 431 (1952). See also *La Salle National Bank v. County of Cook*, 57 Ill. 2d 318, 322 (1974); *People ex rel. Hamer v. Jones*, 39 Ill. 2d 360, 369 (1968).

We therefore first consider whether the taxpayer was entitled to injunctive relief.

■■ The general rules upon which equity assumes jurisdiction over the assessment and collection of real estate taxes have been clearly stated in *Clarendon Associates v. Korzen*, 56 Ill. 2d 101, 107 (1973).

The court concluded:

> "In view of the existence of our present statutory remedy, there is no apparent reason for continuing to afford equitable relief in such cases unless the remedy at law is found to be inadequate. We think the principle which this court announced in *Lackey v. Pulaski Drainage Dist.*, 4 Ill. 2d 72, 74, is appropriate as the governing principle in such cases: ' * * * the fundamental rule that equity will not assume jurisdiction unless special grounds for equitable jurisdiction are established, and unless the plaintiff does not have an adequate remedy at law, is subject to two exceptions; namely, where a tax is unauthorized by law or is levied upon exempt property.' This rule requires that, other than in cases involving the two exceptions, a special ground for equitable jurisdiction, such as fraudulently excessive assessment, must exist *and* that an adequate remedy at law must not be available."

The taxpayer has conceded that the property is subject to and not

exempt from taxation. Both the taxpayer and the defendants have argued the case on the basis of whether the tax and the assessment in question was "unauthorized." We conclude that the tax and the assessment are not "unauthorized" as the term is used in the cases.[1]

The provision of section 111.1 of the Revenue Act that "[A]ny taxpayer not satisfied with the decision of the board of review as such decision pertains to the assessment of his property for taxation purposes, need not appeal such decision to the Property Tax Appeal Board for review before seeking relief in the courts" (Ill. Rev. Stat. 1975, ch. 120, par. 592.1) does not invoke the equity jurisdiction of the court in this case unless the taxpayer can show that he is seeking relief from an unauthorized tax or that other special grounds for equitable jurisdiction are present. *Clarendon Associates v. Korzen*, 56 Ill. 2d 101 (1973)

The assessor had the general authority to make the assessment under powers granted in several sections of the Revenue Act (see Ill. Rev. Stat. 1975, ch. 120, pars. 482-88, 511, 523, 525). Although the Revenue Act of 1939 (Ill. Rev. Stat. 1975, ch. 120, par. 482 *et seq.*) contemplates a general assessment of real estate every four years (pars. 482, 511), it is apparent that the assessment officials have the power and the duty to inspect real property within their jurisdiction annually for the purpose of making certain changes and revisions. (See pars. 483, 518, 522, 523, 527, 575-78, 584.) Therefore, even without reference to the express language in section 46 of the Revenue Act (par. 527), which appears to permit a revision "in any year," it cannot be said that the assessor was wholly unauthorized to make the revision. The assessor, therefore, had the power to function and procedural irregularities, if any, did not make the tax "unauthorized by law." *North Pier Terminal Co. v. Tully*, 62 Ill. 2d 540, 548-49 (1976).

Further, some portion of the tax based on the assessment would have been authorized in any event. If a portion of the tax is authorized and the unauthorized part cannot be separated, the tax is treated as authorized for the purpose of determining the question of the availability of equitable relief. *Lakefront Realty Corp. v. Lorenz*, 19 Ill. 2d 415, 419-20 (1960); *Strahan v. MacDonald*, 37 Ill. App. 3d 840, 842 (1976); *Hulse v. Kirk*, 28 Ill. App. 3d 839, 843-44 (1975). See also *Amos v. Schlaeger*, 386 Ill. 160 (1944).

■■ The taxpayer has not cited a single property tax case which supports his argument that the court in equity must hear a tax case when it is alleged that apparent authority in the statute to make a nonquadrennial

---

[1] We note, however, that there appears to be a question, not raised by either party, whether the *Clarendon* exceptions are applicable in real property tax cases arising in counties not having over 1,000,000 population in view of the administrative remedies available under sections 111.1-111.5 of the Revenue Act of 1939 (Ill. Rev. Stat. 1975, ch. 120, pars. 592.1-592.5). See *Sta-Ru Corp. v. Mahin*, 64 Ill. 2d 330, 334 (1976); *Illinois Bell Telephone Co. v. Allphin*, 60 Ill. 2d 350, 357-59 (1975).

assessment is, in fact, not legal and constitutional authority. None of the cases cited by the taxpayer determines the question whether the tax was unauthorized. (See, *e.g., Flood v. Margis*, 461 F.2d 253 (7th Cir. 1972); *Ward v. Board of County Commissioners*, 253 U.S. 17, 64 L. Ed. 751, 40 S. Ct. 419 (1920); *Monroe v. Pape*, 365 U.S. 167, 5 L. Ed. 2d 492, 81 S. Ct. 473 (1961).) On the contrary, a review of the cases in which equity has intervened demonstrates that the intervention usually occurs where the action of the local official is clearly extreme and arbitrary in disregard of the settled law (see *e.g., People's Gas Light & Coke Co. v. Struckart*, 286 Ill. 164 (1919); *Searing v. Heavysides*, 106 Ill. 85 (1883)) which does not appear to be the case here.

We also conclude that the taxpayer was not entitled to relief in equity for the further reason that his remedies at law were adequate.

■■ ■ The legal validity or constitutionality of a property tax assessment may be treated in tax objection proceedings in the circuit court (*La Salle National Bank v. County of Cook*, 57 Ill. 2d 318, 324 (1974); *Mid-Continental Realty Corp. v. Korzen*, 40 Ill. App. 3d 133, 145-46 (1976)), as well as in proceedings in the circuit court on administrative review of the State Property Tax Appeal Board's decision. (*Moniot v. Property Tax Appeal Board*, 11 Ill. App. 3d 309, 310 (1973).) It should also be observed that the question whether the assessment of real property may be changed in a nonquadrennial year may be addressed in an appeal from objection proceedings. *People ex rel. Warning v. St. Louis Bridge Co.*, 281 Ill. 462 (1917).

Further, the record does not show that the taxpayer was unable to take advantage of the legal remedy of paying his taxes under protest. *Cf. Mid-Continental Realty Corp. v. Korzen*, 40 Ill. App. 3d 133, 141-42.

Nor are we persuaded by plaintiffs' argument that their remedies at law are inadequate because of the necessity of filing an annual suit until the matter is adjudicated, the loss of interest on monies paid under protest, the unascertainability of damages, or the unavailability of direct action against the assessor or the board of review. In *Hoyne Savings & Loan Association v. Hare*, 60 Ill. 2d 84, 90-91 (1974), the Illinois Supreme Court found that although a special ground for equitable jurisdiction in a fraudulently excessive assessment existed and that there was an inadequate remedy at law, its equitable consideration did not extend to the year in which the taxpayer elected not to pursue the legal remedy provided by statute. (See also *People ex rel. Korzen v. Fulton Market Cold Storage Co.*, 62 Ill. 2d 443, 446-47 (1976).) The loss of interest has also been held not to be ground for equitable intervention. (*Lakefront Realty Corp. v. Lorenz*, 19 Ill. 2d 415, 422-23 (1960); *Mid-Continental Realty Corp. v. Korzen*, 40 Ill. App. 3d 133, 136.) In addition, the taxpayer has a clear remedy against the parties defendant in this action if he can

show a neglect or evasion of duty by assessment officers. See Ill. Rev. Stat. 1975, ch. 120, pars. 803, 804 and 805.

It is apparent that the taxpayer has an adequate remedy provided in the Revenue Act of 1939. He may file a complaint with the County Board of Review. (Ill. Rev. Stat. 1975, ch. 120, par. 589(4). See generally pars. 588-592.) If he is not satisfied with the disposition of his complaint in the board of review, he may either seek review by filing an appeal to the State Property Tax Appeal Board whose decision in turn is reviewable by the circuit court pursuant to the provisions of the Administrative Review Act (see Ill. Rev. Stat. 1975, ch. 120, par. 592.4; and ch. 110, par. 264 *et seq.*) or he may pass the taxes in full under protest and receive an adjudication of his objections in tax objection proceedings before the circuit court. (See Ill. Rev. Stat. 1975, ch. 120, pars. 675, 675(a), 716.) Under the statutory scheme the taxpayer is able to receive an adjudication of the legality of the 1974 reassessment of which he complains without a determination by a court of equity in the first instance.

In view of the importance of the unimpaired collection of taxes, we conclude that the trial court did not abuse its discretion in refusing equitable jurisdiction in this case. The trial court did not err therefore in dismissing counts I and II of the complaint.

In count III of the complaint the taxpayer attempts to allege a cause of action against the board and the assessor based on alleged deprivation of constitutional rights pursuant to 42 U.S.C. § 1983 (1970) which provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

In count III the taxpayer complains that the assessor by "withholding notice of his new or planned revision of Taxpayer's assessment from November 1973 until nearly the end of 1974, deprived Taxpayer of reasonable opportunity to prepare an appeal from the revision prior to the December 31, 1974, expiration date for such an appeal." He also charges that the board deprived him of procedural due process by (1) giving an inadequate notice of the hearing on his complaint, (2) denying him a continuance and (3) refusing to rule specifically on his claims that the assessment was unauthorized as a matter of law or, if authorized, was authorized under an unconstitutional statute. He alleges that such wilful denial caused him great mental anguish and that the assessment was increased "without giving taxpayer an meaningful opportunity to

determine if the increase was fair and reasonable and to make an informed appeal if it was not."

■■ To state a cause of action under 1983 a plaintiff must first plead facts sufficient to show that the defendant has (1) acted under color of State law and (2) infringed upon or deprived him of constitutional rights. *Cf. Kadlec v. Illinois Bell Telephone Co.*, 407 F.2d 624 (7th Cir. 1969), *cert. denied*, 396 U.S. 846, 24 L. Ed. 2d 95, 90 S. Ct. 90.

The provisions of section 1983 have been applied to an allegation of deprivation of property rights (*Flood v. Margis*, 461 F.2d 253, 255 (7th Cir. 1972)) in violation of procedural due process rights. (*Hostrop v. Board of Junior College District No. 515*, 523 F.2d 569, 579 (7th Cir. 1975).) However, the plaintiff is also required to set forth specific illegal conduct and resultant harm in a way which will permit an informed ruling whether the wrong complained of abridges the Federal rights included in section 1983. *Duncan v. Nelson*, 466 F.2d 939, 943 (7th Cir. 1972), *cert. denied*, 409 U.S. 894, 34 L. Ed. 2d 152, 93 S. Ct. 116, 175.

■■ In *Dietman v. Hunter*, 5 Ill. 2d 486, 489 (1955), the Illinois Supreme Court stated procedural due process requirements relative to taxing procedures:

> "Due process requires that the property owner be given notice and an opportunity to be heard upon the valuation of his property at some point in the taxing process before his liability to pay the tax becomes conclusively established. * * * On the other hand, the taxpayer is not entitled to notice and an opportunity to be heard at each stage, or at any particular stage, of the assessment procedure. * * *
>
> The requirements of due process are satisfied by a law which affords an opportunity to be heard with respect to assessments before the board of review. 'But a law prescribing a time when complaints will be heard before the board of review is all the notice that is required. [Citation.] If the law secured to the defendant a hearing after the assessment was in fact made, of which he had notice by the statute, that would be sufficient.' "

(See also *Little Sister Coal Corp. v. Dawson*, 45 Ill. 2d 342, 344-46 (1970); *In re Application of County Treasurer*, 42 Ill. App. 3d 895, 898 (1976).) An assessor's failure to grant any hearing or his increase of an assessment without notice and an opportunity to be heard may, however, amount to denial of a party's constitutional right to due process. See *Exchange National Bank v. Cullerton*, 20 Ill. App. 3d 370, 376 (1974).

It appears from the allegations of the complaint that the taxpayer did have notice of the increased assessment and did have a hearing before the board of review. According to the complaint, it appears that the taxpayer

received notice of the revision on December 12, 1974, pursuant to the statute which required publication of the assessment changes on or before December 15. (Ill. Rev. Stat. 1973, ch. 120, par. 484.) From our review of the record it appears to us that the assessor complied with the statutory requirement for notice and publication by December 15 and that the taxpayer had at least 18 days in which to file his complaint. We note that it has been held that the assessor's failure to obey the publication and notice requirements of the statute does not constitute a violation of due process so long as the taxpayer, in fact, has sufficient notice of the change and an opportunity to be heard before the board of review. (See *People v. Holmstrom*, 8 Ill. 2d 401, 406 (1956), *appeal dismissed*, 352 U.S. 938, 1 L. Ed. 2d 235, 77 S. Ct. 262, and *People ex rel. Ball v. Anderson*, 21 Ill. 2d 396, 401 (1961), *appeal dismissed*, 368 U.S. 18, 7 L. Ed. 2d 86, 82 S. Ct. 137.) Moreover, a statute providing a ten-day period in which to file a complaint before the Cook County board of appeals has been upheld in the face of a procedural due process challenge. (See *In re Application of County Treasurer*, 26 Ill. App. 3d 753, 764 (1975).) Therefore, we do not believe that the allegations demonstrating that the taxpayer had 18 days in which to file a complaint were, without more, sufficient to indicate a deprivation of due process.[2] Further, the hearing mandated by the statute was held on January 9, 1975.

The taxpayer's complaint does not allege facts sufficient to show that the time he was given between December 12 and January 9 to prepare a complaint and present evidence at a hearing was so inadequate as to amount to deprivation of procedural due process.

■■ ■ It appears that the statutory procedures were followed. Further, the taxpayer does not challenge the constitutionality of the statute. The essence of the complaint is that the taxpayer suffered mental anguish as a result of being obliged to follow the pleading and hearing schedule set by the statute and the Board and as a result of receiving an adverse decision from the Board. Such allegations are not alone indicative of a violation of procedural due process. The conclusory allegations that the defendants acted "wilfully" and that the notice and hearing were not "reasonable," "timely," or "meaningful" do not take the place of well-pleaded facts from which it may reasonably be inferred that due process

---

[2] The timing and content of a notice and the nature of the hearing required to conform to procedural due process "will depend on appropriate accommodation of the competing interests involved." (*Goss v. Lopez*, 419 U.S. 565, 579, 42 L. Ed. 2d 725, 737, 95 S. Ct. 729, 738-39 (1975).) In *Goldberg v. Kelly*, 397 U.S. 254, 25 L. Ed. 2d 287, 90 S. Ct. 1011, 1020 (1970), the United States Supreme Court was "not prepared to say" that the seven-day notice provided by New York City before a hearing on termination of welfare benefits was constitutionally insufficient per se although it indicated that there might be cases where fairness would require that a longer time be given. In *Briscoe v. Kusper*, 435 F.2d 1046, 1056 (7th Cir. 1971), the court declined to hold that the Illinois State election law provision then in effect which resulted in only 24-hour notice for objectors was constitutionally deficient.

was denied. In the absence of such facts, we cannot say that the trial court erred in dismissing count III.

■■ The taxpayer has also argued that the denial of his motion for a preliminary injunction was improper. However, in real estate tax cases it appears that a preliminary injunction should not issue in cases where the tax is not attacked as being wholly unauthorized and the plaintiff has not pleaded an inability to pay his taxes under protest. *Clarendon Associates v. Korzen,* 56 Ill. 2d 101 (1973); *Euclid Corp. v. Tully,* 42 Ill. App. 3d 105 (1976); *Exchange National Bank v. Cullerton,* 17 Ill. App. 3d 392 (1974).

■■ The taxpayer also argues that the trial judge abused his discretion by permitting the defendants to file their motions to dismiss the plaintiffs' complaint after the time for filing had passed. The allowance was within the sound discretion of the trial court. (See Supreme Court Rule 183 (Ill. Rev. Stat. 1975, ch. 110A, par. 183); *McGrath Heating & Air Conditioning Co. v. Gustafson,* 38 Ill. App. 3d 465, 469 (1976); *City of Chicago v. Sunnyside Properties, Inc.,* 6 Ill. App. 3d 921, 924 (1972).) On the record in this case, we find no abuse of discretion.

The taxpayer's motion to strike that portion of the defendants' brief which indicated that the taxpayer had not relied on 42 U.S.C. § 1983 (1970) below as a basis to support count III of his complaint has been taken with the case. We agree with the taxpayer that the issue was raised in the trial court, and we do not condone the defendants' implication to the contrary. However, the grant of the motion would have no practical effect since we have ruled upon the issue. The motion is therefore denied. For the reasons given the judgment is affirmed.

Affirmed.

RECHENMACHER, P. J., and GUILD, J., concur.